UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
Springfield Division

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>KEITH HALLIBURTON,<br><br>Defendant. | Case No. 17-20028 |

REPORT AND RECOMMENDATION

This matter is before the Court for a Report and Recommendation on Defendant Keith Halliburton's Motion to Suppress Evidence (d/e #15). Keith Halliburton (hereafter either "Halliburton" or "Defendant") was charged by indictment with a single charge of Possession of a Controlled Substance with Intent to Distribute (d/e #1). The parties stipulated to the evidence relating to the seizure (d/e #23) and thereby agree that the matter can be resolved without an evidentiary hearing. Accordingly, no hearing was held. The Court, after considering the parties' briefs, the applicable law, and the stipulated evidence, hereby recommends that the Motion should be DENIED.

## FACTS

The evidence stipulation is included below in its entirety for ease of reference:

On March 4, 2016, United States Postal Inspector Keith Williams ("Insp. Williams") contacted the Decatur Police Department Street Crimes Unit and advised that two suspicious packages ("subject packages") were in route to 1404 E. Main, Decatur, Illinois ("subject premises"). On March 7, 2016, Insp. Williams intercepted the two packages and brought them to the Decatur Police Department ("DPD") where Detective Chad Larner ("Det. Larner") conducted a free air sniff with his certified police K-9 Neko. Neko gave positive alerts for controlled substances on both packages. The subject packages both contained the same return address in California and were addressed to Lisa Lawis at the subject premises. Officers were able to determine that the name Lisa Lawis was not associated with the subject premises.

1

On March 8, 2016, Insp. Williams obtained a federal search warrant for the subject packages from United States Magistrate Judge Eric Long. Upon executing the search warrants at the DPD, officers found approximately 2,685 grams of marijuana in one package and approximately 5,927 grams of marijuana in the other package. Officers removed most of the marijuana but left some in each package in anticipation of a controlled delivery of the subject packages.

On March 8, 2016, Detective Jeff Hockaday ("Det. Hockaday") of DPD obtained permission to install "a GPS tracking device and/ or monitoring device with a breakaway filament" in both subject packages in Macon County Circuit Court. Det. Hockaday also obtained anticipatory search warrants for the delivery of the subject packages.

Prior to the delivery of the subject packages law enforcement officers had determined that the defendant had been associated with the subject premises in 2015 via a water bill, the defendant had been associated with another package containing marijuana in 2014, and the defendant was currently in federal custody at a halfway house for a drug trafficking offense. Based on this information, officers had obtained and circulated a picture of the defendant, in anticipation of the fact that he might be the intended recipient of the subject packages. In addition, when the bureau of prisons assigned the defendant to a halfway house in the area Det. Hockaday personally met with the defendant in an attempt by the defendant to cooperate with law enforcement. Based on this meeting, Det. Hockaday could identify the defendant.

At approximately 2:45 PM on March 8, 2016, USPIS Josh Bergeron (Insp. Bergeron) delivered the subject packages while dressed as a United States Postal carrier. Insp. Bergeron placed the boxes on the porch of the subject premises after receiving no response from anyone inside the residence. Officers in the area remained on surveillance. At approximately 3:20 PM, officers observed a silver Volkswagen arrive at the residence. The description of the sole occupant of the vehicle matched the defendant's description. Officers then observed the defendant exit the silver Volkswagen, proceed to the porch of the subject premises and pick up the subject packages. The defendant then stood on the porch of the subject premises and examined the subject packages before taking both packages back to his vehicle and leaving the area.

Surveillance officers followed the defendant directly to 849 N. Dunham in Decatur. During this time officers established the silver Volkswagen was registered to the defendant at an address in Springfield,

IL. At 849 N. Dunham, officers observed the defendant's vehicle parked in the driveway next to a white Pontiac van. The Pontiac van had its doors open. Officers then saw the defendant reaching into the back of his vehicle, where he had earlier placed the subject packages. After about 10 minutes, surveillance officers saw the defendant leave 849 N. Dunham in his silver Volkswagen. The doors to the white Pontiac van were now closed. Insp. Bergeron advised the other members of the investigation that the tracking devices placed inside the subject packages indicated that they were no longer in the defendant's vehicle but had been transferred to the white Pontiac van and remained at 849 N. Dunham.

Shortly after the defendant left 849 N. Dunham, Det. Larner conducted an investigatory stop on the defendant's vehicle. The entirety of the stop and the conversation between Det. Larner and the defendant was audio/video recorded by Det. Larner's in-car camera. At approximately 3:40 PM, Det. Larner made contact after pulling the defendant over. Det. Larner took (sic) advised the defendant of his *Miranda* rights, at which time the defendant waived his rights and agreed to cooperate with officers. The defendant advised Det. Larner that the packages were meant for him (the defendant), they contained marijuana, and he had placed them in the white Pontiac van at 849 N. Dunham. Det. Larner drove the defendant back to 849 N. Dunham, arriving at approximately 3:54 PM.

At approximately 3:56 PM, Det. Hockaday met with the defendant and began questioning him. The defendant gave verbal and written permission to search the entire premises of 849 N. Dunham and provided Det. Hockaday with the keys to the white Pontiac van so officers could search it. The defendant also gave Insp. Williams verbal permission to search the white Pontiac van. After beginning to search the residence, Det. Hockaday returned to the marked police SUV and retrieved the key to the van the defendant had supplied so that officers could unlock the van in order to search it. At some time after 4:07 PM, officers used the key supplied by the defendant to unlock the van and began their search. While searching the van officers recovered the evidence underlying the charges in this case. At no time did the defendant open either of the subject packages.

## ANALYSIS

Halliburton's motion is focused on the conditions precedent to the warrant. Specifically, Defendant argues that the triggering conditions for the anticipatory warrant never occurred, asserting that the warrant was contingent on Defendant

accepting delivery of the package on behalf of Lisa Lawis and opening the package upon delivery. He argues that neither event happened, so the warrant could not be executed.

The Government responds that the warrant was conditioned on events different from those relied on by Defendant and that both conditions occurred. The Government argues that the warrant was conditioned on 1) an adult willing to accept delivery on behalf of the recipient named on the package accepting the package and 2) the package being brought into a vehicle or residence by the person accepting the package. According to the Government, both events happened.

The Government alternatively argues that Defendant consented to the searches in question, thereby rendering the warrant unnecessary. Although Defendant does not address the consent issue directly, he argues in one sentence that "[t]he fact is that he should never have been stopped, ergo any incriminating statements he made are fruit of the poisonous tree."

The Court, for the reasons explained below, finds and recommends that both triggering events for the warrant occurred. Moreover, even if those events had not occurred, Defendant consented to the searches in question after a legally executed *Terry* stop.

### **Anticipatory Warrant**

"Anticipatory search warrants are peculiar to property in transit." *United States v. Leidner*, 99 F.3d 1423, 1425 (7th Cir. 1996). While ordinary search warrants are issued based on probable cause that contraband is presently on the property to be searched, anticipatory warrants are issued on probable cause that the contraband *will* be located there at the time of the search. *Id. United States v. Dennis,* 115 F.3d 524, 528 (7th Cir. 1997); *Leidner,* 99 F.3d at 1427–28. According to the Supreme Court, anticipatory warrants require a determination: 1) that it is *now* probable; 2) that contraband *will be* on the described premises; 3) when the warrant is executed. *United States v. Grubbs*, 547 U.S. 90, 126 S. Ct. 1494, 164 L. Ed. 2d 195 (2006). Accordingly, there must be probable cause to believe that the contraband will be located on the premises after certain events

4

transpire, and these conditions precedent to the execution are integral to its validity. *Dennis*, 115 F.3d at 528; *United States v. Brack*, 188 F.3d 748, 755 (7th Cir. 1999).

The judge issuing the warrant normally protects against premature execution by listing in the warrant the conditions governing its execution. *Dennis*, 115 F.3d at 528. The warrant conditions governing the execution should be "explicit, clear, and narrowly drawn so as to avoid misunderstanding or manipulation by government agents." *Leidner*, 99 F.3d at 1426, *quoting Garcia*, 882 F.2d at 703–04.

Here, the warrants are vague about the conditions that triggered the warrants' validity. According to them, authority to execute the search arose "once the parcel has been delivered by law enforcement personnel." It does nothing to answer to whom or to where the parcel should be delivered. This, out of context, would give the Government authority to deliver the parcel to anyone at any address, thereby failing completely to guard against government overreach through a general warrant, which is prohibited. So, obviously, the warrants alone, when taken out of context from the complaints, inadequately define the conditions precedent to execution of the warrant.

However, anticipatory warrants do not fail because they inadequately define the conditions precedent. *Grubbs*, 547 U.S. at 99. Instead, the warrants must only particularly describe the place to be searched and the persons or things to be seized. *Id.* at 97. These warrants define both. First, the warrants authorized the search of "any person taking control of" the packages and "1404 E. Main, Decatur, Illinois Macon County or any premises or vehicle within the State of Illinois that [the packages are] brought into." Second, the warrants authorize officers to seize very specific evidence of unlawful possession of cannabis with intent to deliver, including controlled substances, paraphernalia, and other related items. The warrants themselves are therefore sufficiently particular.

For anticipatory warrants to be valid, though, the warrant, when taken with the application, still must define the conditions precedent. *See Leidner*, 99 F.3d 1426-27. Here, both complaints included the conditions that were necessary prior to the

5

execution of the warrants. The applications asked that the warrants be issued "with their execution contingent upon the fulfillment of the following procedure":

> a. On or about March 8th, 2016, and in the event the delivery is unsuccessful, on succeeding dates thereafter, within the time period authorized, a law enforcement agent, wearing a USPS letter carrier uniform, will attempt to deliver the aforementioned Priority Mail package to 1404 E. Main St, Decatur, IL 62521;
>
> b. Delivery will be made only to an adult willing to accept delivery on behalf of "Lisa Lawis" to whom the subject package is addressed. Every effort will be made to make delivery to "Lisa Lawis" and in no event will the package be delivered to a child;
>
> c. Once the delivery has been made, the agents will execute the search warrant within the time period authorized;
>
> d. The warrant will be executed on the subject premises or alternate location which the package is observed being delivered/brought to.

Gov. Ex. 4 and 5, Complaints For Search Warrant, para. 13. Thus, the agents were required to ensure that each of the two conditions identified in parts a and b occurred before they could execute the warrants.

First, the agents needed to "attempt to deliver the aforementioned Priority Mail package to 1404 E. Main St., Deactur, IL." There is no argument whether this happened. According to the stipulated evidence, "[a]t approximately 2:45 PM on March 8, 2016, USPIS Josh Bergeron (Insp. Bergeron) delivered the subject packages while dressed as a United States Postal carrier." The first condition was accomplished.

Second, the agents required delivery to an adult willing to accept delivery on behalf of "Lisa Lawis". When the warrants and complaints are taken together, it becomes apparent that this is the primary triggering event. "Once the delivery has been made," according to the complaints, the officers were authorized to search. This language is nearly identical to the language ("once the parcel has been delivered by law enforcement personnel") the judge used in the warrant.

Halliburton argues that the warrants also required that the packages be opened. This argument is unsupported by either the affidavits or the warrants. As part of the

complaints in support of the warrants, the affiant explained that officers would place a remote device in the packages that would allow the officers to track the location of the packages and notify them when, or if, the packages were opened. (This tracking device is not mentioned in the warrants.)  Although this provided the judge with information about how the agents will monitor the package once it is delivered, the tracking device was not tied to the anticipatory nature of the warrant in any way.  Instead, it gave the officers the information necessary to identify the location of the package so they could then search "any premises or vehicle within the State of Illinois that [the packages are] brought into." There is nothing to suggest that opening the packages was related to, or supposed to be, a precondition to the search.

So, this motion really hinges on whether Halliburton accepted delivery on behalf of Lisa Lawis.  He did (or he stole the packages as discussed below).  The officers left the packages on the porch at 1404 E. Main St.   The packages were addressed to Lisa Lawis at that particular address.  After leaving the packages at the intended address, clearly labeled for delivery to the intended recipient, Halliburton took the packages.  The parties agree in their stipulation that:

> At approximately 3:20 PM, officers observed a silver Volkswagen arrive at the residence. The description of the sole occupant of the vehicle matched the defendant's description. Officers then observed the defendant exit the silver Volkswagen, proceed to the porch of the subject premises and pick up the subject packages. The defendant then stood on the porch of the subject premises and examined the subject packages before taking both packages back to his vehicle and leaving the area.

By taking the packages and leaving the area, Halliburton accepted the packages on behalf of the named recipient, Lisa Lawis.  This act by Halliburton triggered the second condition precedent, thereby authorizing the officers to execute the search warrants at the warrant address or any premises or vehicle into which the packages were brought.

Accordingly, the two conditions to the anticipatory warrants were satisfied prior to the officers executing the warrants.  The Motion to Suppress should be denied for this reason.

**Consent**

Even if the Court were to accept Defendant's argument that the conditions precedent to the warrant were not triggered, Halliburton consented to both searches. Halliburton's only argument against consent is that his statements should be suppressed because the investigative stop was only authorized by the warrants.

This is not the case. According to the parties' stipulated evidence,

> Shortly after the defendant left 849 N. Dunham, Det. Larner conducted an investigatory stop on the defendant's vehicle. The entirety of the stop and the conversation between Det. Larner and the defendant was audio/video recorded by Det. Larner's in-car camera. At approximately 3:40 PM, Det. Larner made contact after pulling the defendant over. Det. Larner took (sic) advised the defendant of his *Miranda* rights, at which time the defendant waived his rights and agreed to cooperate with officers. The defendant advised Det. Larner that the packages were meant for him (the defendant), they contained marijuana, and he had placed them in the white Pontiac van at 849 N. Dunham. Det. Larner drove the defendant back to 849 N. Dunham, arriving at approximately 3:54 PM.

> At approximately 3:56 PM, Det. Hockaday met with the defendant and began questioning him. The defendant gave verbal and written permission to search the entire premises of 849 N. Dunham and provided Det. Hockaday with the keys to the white Pontiac van so officers could search it. The defendant also gave Insp. Williams verbal permission to search the white Pontiac van.

Given this, if the officer's investigative stop was legal, then Halliburton consented to the searches, which renders the warrants unnecessary. To justify a *Terry* stop, the officer must have specific and articulable facts, which, taken together with the rational inferences drawn from them, reasonably warrant the intrusion. *United States v. Rivers*, 121 F.3d 1043, 1045 (7th Cir. 1997). Reasonable suspicion is a quantum of proof less demanding than the probable cause needed for an arrest but more than a hunch—there must be "some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." *United States v. Ienco*, 182 F.3d 517, 523 (7th Cir. 1999), *quoting United States v. Cortez*, 449 U.S. 411, 417 (1981); *United States v. Brown*, 188 F.3d 860, 864 (7th Cir. 1999).

The court evaluates a purported *Terry* stop by examining whether the officer's actions were justified at their inception and whether the actions were reasonably related in scope to the circumstances that justified the interference. *Ienco*, 182 F.3d at 523. These examinations turn on two factors: (1) whether the police were aware of specific and articulable facts giving rise to reasonable suspicion; and (2) whether the degree of the intrusion was reasonably related to the known facts.[1] *United States v. Duguay*, 93 F.3d 346, 350 (7th Cir. 1996). The determination of whether the stop is reasonable and whether the police have sufficient information to make an investigative detention requires an examination of the totality of the circumstances, which encompasses the experience of the officers and the behavior of the defendant. *United States v. Swift*, 220 F.3d 502, 506 (7th Cir. 2000), *cert. denied*, 531 U.S. 1169 (2001).

Here, the officer was aptly justified to stop Halliburton once he removed the two packages from the porch at 1404 Main St. The officer was aware that Halliburton had taken possession of two packages addressed to "Lisa Lawis" that had been left for delivery on the porch at 1404 E. Main St. in Decatur. On the one hand, if he admits that he lawfully took the packages addressed to Lawis, then he admits to having triggered the conditions precedent to the warrant. On the other hand, if he argues that he did not accept the packages on behalf of Lisa Lawis, then there is reasonable suspicion, at an absolute minimum, that he violated any number of criminal statutes relating to the obstruction, delay, or theft of mail. *See* 18 U.S.C. §§ 1702, 1703, and 1708. Either of these scenarios gave the officer reasonable suspicion for the *Terry* stop.

But the officer knew much more than just that. He was aware that the packages contained a controlled substance. He was aware that Defendant had been associated with the subject premises in 2015, via a water bill. He was aware that he had been associated with another package containing marijuana in 2014. And, he was aware that Halliburton was currently in federal custody at a halfway house for a drug trafficking offense. This is more than enough, even without the warrants, to give the officer who

---

[1] Halliburton does not challenge the degree of the intrusion, only the basis for the stop. Any challenge to this aspect of the analysis therefore has been waived and will not be addressed in this Recommendation.

9

stopped Halliburton specific and articulable facts of a reasonable suspicion that Halliburton was engaged in, or about to engage in, criminal activity. This justified the *Terry* stop, which led to his consent to search the properties.

## CONCLUSION

In the end, as it relates to this motion to suppress, Halliburton was in a no win situation once he removed the packages from the porch. If he argues that he did not accept the packages on behalf of Lisa Lawis, then there is reasonable suspicion that he violated any number of criminal statutes relating to the obstruction, delay, or theft of mail. *See* 18 U.S.C. §§ 1702, 1703, and 1708. This gave the officers reasonable suspicion for the *Terry* stop, which led to his otherwise unchallenged consent to search the properties. On the other hand, if he admits that he accepted delivery of the packages addressed to Lawis, then he admits to having triggered the conditions precedent to the warrant. Under either scenario, the searches were legal, and the Motion to Suppress should be denied.

For these reasons, the Court recommends that Defendant Halliburton's Motion to Suppress Evidence **(#15)** be **DENIED**. The parties are advised that any objection to this recommendation must be filed in writing with the clerk within 14 days after being served with a copy of this Report and Recommendation. *See* 28 U.S.C. § 636(b)(1). Failure to object will constitute a waiver of objections on appeal. *Video Views, Inc. v. Studio 21, Ltd.*, 797 F.2d 538, 539 (7th Cir. 1986).

ENTERED this 10th day of January, 2018.

s/ ERIC I. LONG
UNITED STATES MAGISTRATE JUDGE
