**IN THE UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**SPRINGFIELD DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | No. 17-cr-20028 |
| KEITH HALLIBURTON, | ) ) ) | |
| Defendant. | ) | |

## ORDER ADOPTING REPORT AND RECOMMENDATION

SUE E. MYERSCOUGH, U.S. District Judge.

Before the Court is Magistrate Judge Eric Long's Report and Recommendation (d/e 27) that recommends denying Defendant Keith Halliburton's Pretrial Motion to Suppress Evidence (d/e 15). The Court ADOPTS Magistrate Judge Long's Report and Recommendation (d/e 27) and DENIES Defendant's Motion to Suppress (d/e 15).

### I. BACKGROUND

The parties have stipulated to the facts in lieu of an evidentiary hearing. See Stipulation (d/e 23). For ease of reference, the evidence stipulation is again included below in its entirety:

At approximately 2:45 PM on March 8, 2016, USPIS Josh Bergeron (Insp. Bergeron) delivered the subject packages while dressed as a United States Postal carrier. Insp. Bergeron placed the boxes on the porch of the subject premises after receiving no response from anyone inside the residence. Officers in the area remained on surveillance. At approximately 3:20 PM, officers observed a silver Volkswagen arrive at the residence. The description of the sole occupant of the vehicle matched the defendant's description. Officers then observed the defendant exit the silver Volkswagen, proceed to the porch of the subject premises and pick up the subject packages. The defendant then stood on the porch of the subject premises and examined the subject packages before taking both packages back to his vehicle and leaving the area.

Surveillance officers followed the defendant directly to 849 N. Dunham in Decatur. During this time officers established the silver Volkswagen was registered to the defendant at an address in Springfield, IL. At 849 N. Dunham, officers observed the defendant's vehicle parked in the driveway next to a white Pontiac van. The Pontiac van had its doors open. Officers then saw the defendant reaching into the back of his vehicle, where he had earlier placed the subject packages. After about 10 minutes, surveillance officers saw the defendant leave 849 N. Dunham in his silver Volkswagen. The doors to the white Pontiac van were now closed. Insp. Bergeron advised the other members of the investigation that the tracking devices placed inside the subject packages indicated that they were no longer in the defendant's vehicle but had been transferred to the white Pontiac van and remained at 849 N. Dunham.

Shortly after the defendant left 849 N. Dunham, Det. Larner conducted an investigatory stop on the defendant's vehicle. The entirety of the stop and the conversation between Det. Larner and the defendant was audio/video recorded by Det. Larner's in-car camera. At approximately 3:40 PM, Det. Larner made contact after pulling the defendant over. Det. Larner took (sic) advised the defendant of his Miranda rights,

at which time the defendant waived his rights and agreed to cooperate with officers. The defendant advised Det. Larner that the packages were meant for him (the defendant), they contained marijuana, and he had placed them in the white Pontiac van at 849 N. Dunham. Det. Larner drove the defendant back to 849 N. Dunham, arriving at approximately 3:54 PM.

At approximately 3:56 PM, Det. Hockaday met with the defendant and began questioning him. The defendant gave verbal and written permission to search the entire premises of 849 N. Dunham and provided Det. Hockaday with the keys to the white Pontiac van so officers could search it. The defendant also gave Insp. Williams verbal permission to search the white Pontiac van. After beginning to search the residence, Det. Hockaday returned to the marked police SUV and retrieved the key to the van the defendant had supplied so that officers could unlock the van in order to search it. At some time after 4:07 PM, officers used the key supplied by the defendant to unlock the van and began their search. While searching the van officers recovered the evidence underlying the charges in this case. At no time did the defendant open either of the subject packages.

In the Motion to Suppress, the Defendant argues that the triggering conditions for the anticipatory warrant did not occur. Defs. Mot. at 7-10 (d/e 15). Specifically, the Defendant argues that the warrant was contingent on the Defendant accepting delivery of the package on behalf of Lisa Lawis and opening the package upon delivery. Id. The Defendant argues that neither event happened, so the warrant could not be executed. Therefore, the detention and

arrest of the Defendant was unlawful and any incriminating statements he made—and, presumably, the consents that he gave to search the van and the house—were "fruit of the poisonous tree." Defs. Mot. at 11. (d/e 15).

The Government argues that the anticipatory search warrant was properly executed and that there was no requirement that the packages be opened before the warrant could be executed. Gov't Resp. at 6-9 (d/e 21). Further, even if the anticipatory search warrants were not properly executed, the Defendant consented to the search after a valid traffic stop. Id. at 13.

In the Report and Recommendation, Magistrate Judge Long found that the warrant, when taken with the application, was valid and defined two conditions precedent: (1) "the agents needed to 'attempt to deliver the aforementioned Priority Mail package to 1404 E. Main St., Deactur, IL'"; and (2) "the agents required delivery to an adult willing to accept delivery on behalf of 'Lisa Lawis.'" Report and Recommendation at 6 (d/e 27). In finding both of the conditions were met, Magistrate Judge Long also rejected Defendant's argument that the packages needed to be opened in order to execute the warrant. Id. at 7. Alternatively, Magistrate

Judge Long found that had the conditions precedent to the warrant not been triggered, the Defendant still consented to both searches after a lawful Terry stop.  Id. at 8.

## II. ANALYSIS

This Court must review de novo those portions of the Report and Recommendation to which timely objections are made.  28 U.S.C. § 636(b)(1).  On January 24, 2018, the Defendant timely filed his Objections to the Report and Recommendation (d/e 29).  The Defendant objects to Magistrate Judge Long's findings that the triggering events for the anticipatory search warrant occurred and that the evidence supports a finding that the Defendant consented to the searches in question after a legally executed Terry stop.  After reviewing the Report and Recommendation, the Court denies the Defendant's Objections and adopts Magistrate Judge Long's Report and Recommendation.

**A. The Conditions Precedent to the Execution of the Warrant Occurred After the Package was Delivered and the Defendant Took Possession of the Package and Drove Away.**

The Defendant argues that the triggering events for the anticipatory search warrant did not occur because for acceptance of

delivery to have occurred the packages needed to be opened. See Def. Objs. at 3 (d/e 29). Magistrate Judge Long found acceptance of the packages had occurred when the Defendant took the packages and left the area. Report and Recommendation at 7 (d/e 27). The Defendant argues that Magistrate Judge Long's interpretation of delivery and acceptance is too broad and would give too much discretion to law enforcement to determine when the triggering event had occurred. The Court agrees with Magistrate Judge Long's determination.

Anticipatory warrants "balance the need to protect the subjects of searches from the abuses of warrantless searches (under the exigent circumstances exception) and the practical needs of law enforcement personnel." United States v. Dennis, 115 F.3d 524, 529 (7th Cir. 1997), quoting United States v. Leidner, 99 F.3d at 1425–26. They are allowed under the Fourth Amendment and are "no different in principle from ordinary warrants." United States v. Grubbs, 547 U.S. 90, 96 (2006). Conditional anticipatory warrants "require the magistrate to determine (1) that it is now probable that (2) contraband, evidence of a crime, or a fugitive will be on the described premises (3) when the warrant is executed." Id.

In order to comply with the Fourth Amendment's requirement of probable cause, there must be probable cause to believe both that the triggering events will occur and that if those triggering events occur, that it is probable "that contraband or evidence of a crime will be found in a particular place." Id. at 96-97.

Here, Magistrate Judge Long found that, when taken with the application, the warrant was valid and defined two conditions precedent: (1) "the agents needed to 'attempt to deliver the aforementioned Priority Mail package to 1404 E. Main St., Deactur [sic], IL'"; and (2) "the agents required delivery to an adult willing to accept delivery on behalf of 'Lisa Lawis.'" Report and Recommendation at 6 (d/e 27). The Defendant does not object to Magistrate Judge Long's finding that the first requirement was met. He objects, however, to Magistrate Judge Long's finding that the second requirement was met when the Defendant took the packages and left the area. This Court agrees with Magistrate Judge Long. These actions fit within the plain meaning of "accept" and provided the law enforcement officers with sufficient probable cause to believe that contraband and evidence of a crime would be found in the van that was searched as a result of the warrant.

Defendant disagrees that acceptance could have occurred without the package being opened. The Defendant bases his objection both on the fact that breakaway filament was obtained and used in each package, and on the holding of People v. Harris, 2015 IL App (1st) 132162, 35 N.E.3d 995 (2015), a case from the Third Division of the First Appellate District of Illinois. In a similar factual scenario, the Harris court held that, in order for the defendant to "accept" a package, the package must be opened and trigger the electronic monitoring device. Id. at 1002. This finding was because "the device provides the necessary objective evidence to particularly identify the person or property to be searched" and "the objective evidence from the device limits the exercise of law enforcement's unfettered discretion to determine whether the warrant's triggering event has actually occurred." Id.

However, Harris is neither controlling nor persuasive authority, and this Court does not agree that opening the package is necessary for law enforcement's discretion to be limited or to particularly identify the person and places to be searched in this case. By interpreting "accept" to include taking possession of the package, the warrant does particularly identify the person or

property to be searched. The person to "accept" the package in this manner can only be a single person, and the property to be searched is limited to the property to which the package is ultimately taken. This interpretation by no means gives law enforcement "unfettered discretion to determine whether the warrant's triggering event has actually occurred." The Defendant also cites to various hypothetical individuals from <u>Harris</u> who he claims could have "accepted" the package under this interpretation: "(i) a next door neighbor who, seeing the package on the front steps of the unoccupied home, brought it inside her home to later give to a family member, (ii) the opportunistic thief who, observing an unattended package on the steps, decided to make off with it with the obvious "intent to retain" it, or (iii) a realtor who, upon arriving with a prospective buyer, brought the package inside the home for safekeeping." <u>See</u> Defs. Objs. at 4 (d/e 29) (<u>quoting</u> <u>Harris</u>, 35 N.E.3d at 1004). The Court finds these hypotheticals unconvincing. The chance of a neighbor or real estate agent bringing the package inside was remote and does not negate the probable cause of the search warrant to search any person who takes possession of the package. Even if acceptance required more than merely taking

possession of the package, here the Defendant did not just move the package inside or take it into a neighboring house. Instead, he drove away with the package and placed it in a different vehicle. Based on these actions, the officers logically and correctly concluded that the Defendant had "accepted" the package.

Further, that law enforcement officers also obtained a warrant to add breakaway filaments to the packages does not automatically make the opening of the package a condition precedent to the anticipatory warrants. There is nothing in the affidavits or the warrants to support this argument. The affidavits' only reference to the devices is a statement that "a GPS and/or a remote device will be placed inside of the subject package with the cannabis and will be tracked via computer and/or cellular telephone device. The remote device, upon opening the package; will set off an alarm/pager device that will be monitored by United States Postal Inspectors." Gov't. Resp. Ex. D, "Complaint for Search Warrant" (d/e 21-4). As Magistrate Judge Long found, while "this provided the judge with information about how the agents will monitor the package once it is delivered, the tracking device was not tied to the anticipatory nature of the warrant in any way." Report and

Recommendation at 7 (d/e 27). The Defendant argues that "[c]ommon sense would dictate that the purpose of including the breakaway filaments in the packages was, so they could ultimately be used to determine when the packages were opened." See Defs. Objs. at 4 (d/e 29). However, even though opening the package was not a condition precedent to executing the warrant, the breakaway filaments still served an important purpose: upon opening the package, the GPS devices would most certainly be discovered and officers would know that they needed to execute the warrants immediately or risk the evidence being discarded or destroyed. As the two conditions precedent to the warrant, delivery of the packages to the specified address and acceptance of the packages by an adult on behalf of "Lisa Lawis," occurred before the officers conducted the searches authorized by the warrant, the searches were lawful and did not violate the Defendant's Fourth Amendment Rights.

### B. The Officers Conducted a Lawful Terry Stop, After Which the Defendant Consented to the Searches.

Magistrate Judge Long also found that even if the warrant were executed prematurely, the searches were still valid because

the Defendant consented to them after a lawful Terry stop. Report and Recommendation at 8 (d/e 27). The Defendant argues that this finding was in error. See Defs. Objs. at 4 (d/e 29). To justify an investigative stop, or a "Terry" stop, "the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Terry v. Ohio, 392 U.S. 1, 21 (1968). Reasonable suspicion is a quantum of proof less demanding than the probable cause needed for an arrest but more than a hunch—there must be "some objective manifestation that the person stopped is, or is about to be engaged in criminal activity." United States v. Ienco, 182 F.3d 517, 523 (7th Cir. 1999), quoting United States v. Cortez, 449 U.S. 411, 417 (1981); United States v. Brown, 188 F.3d 860, 864 (7th Cir. 1999). Courts should not be overly focused on any one factor when determining whether an investigatory stop was reasonable, but rather, should consider "the totality of the circumstances known to officers at the time of the stop." United States v. Swift, 220 F.3d 502, 506 (7th Cir. 2000), cert. denied, 531 U.S. 1169 (2001), quoting United States v. Quinn, 83 F.3d 917 (7th Cir. 1996).

Here, contrary to the Defendant's assertions, the officers had more than just a hunch. By the time the officers stopped the Defendant, the officers had identified him and knew he had taken possession of the two packages. As Magistrate Judge Long noted

> [the officer] was aware that the packages contained a controlled substance. He was aware that Defendant had been associated with the subject premises in 2015, via a water bill. He was aware that [the Defendant] had been associated with another package containing marijuana in 2014. And, he was aware that Halliburton was currently in federal custody at a halfway house for a drug trafficking offense. This is more than enough, even without the warrants, to give the officer who stopped Halliburton specific and articulable facts of a reasonable suspicion that Halliburton was engaged in, or about to engage in, criminal activity.

Report and Recommendation at 9-10 (d/e 27). It is true that the officers did not know for a fact that the Defendant <u>knew</u> the package contained drugs; but even without this knowledge, given the totality of the circumstances, it was a logical assumption that Defendant was engaged in, or about to engage in, criminal activity. This justified the Terry stop, which led to his consent to search the properties.

In the end, as soon as the Defendant removed the packages from the porch, officers could have lawfully conducted the searches in a number of ways. Even if the warrants were not properly

executed, officers had sufficient information about the Defendant to justify a Terry stop on the belief Defendant was engaged or about to be engaged in criminal activity related to drugs. Further, as Magistrate Judge Long pointed out, if Defendant argues "that he did not accept the packages on behalf of Lisa Lawis, then there is reasonable suspicion that he violated any number of criminal statutes relating to the obstruction, delay, or theft of mail." Report and Recommendation at 10 (d/e 27). This, too, would have given the officers reasonable suspicion for the Terry stop. Therefore, the searches were legal, so the Motion to Suppress is denied.

## IV. CONCLUSION

For the reasons stated, Magistrate Judge Long's Report and Recommendation (d/e 27) is ADOPTED. Accordingly, Defendant's Motion to Suppress Evidence (d/e 15) is DENIED.

**ENTERED: February 1, 2018**

**FOR THE COURT:**

                         *s/ Sue E. Myerscough*
                         **SUE E. MYERSCOUGH**
                         **UNITED STATES DISTRICT JUDGE**