E-FILED
Saturday, 16 May, 2020  09:32:41 PM
Clerk, U.S. District Court, ILCD

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF ILLINOIS**
**CASE NO. 17-CR-20028-SEM-EIL**

UNITED STATES OF AMERICA

        Plaintiff,

v.

KEITH HALLIBURTON,

        Defendant.

_____/

### MOTION TO REDUCE SENTENCE UNDER TITLE 18 U.S.C. SECTION 3582 (C)(1)(A)(i) AND THE COVID-19 PANDEMIC

COMES NOW, the Defendant, KEITH HALLIBURTON ("Mr. Halliburton") by and through undersigned counsel, who respectfully moves this Honorable Court pursuant to the newly amended 18 U.S.C section 3582(C)(1)(A)(i) and Memorandums issued by Attorney General William Barr USDOJ dated March 26, 2020, April 3, 2020, and April 6, 2020, based upon the development of the COVID-19 virus pandemic, to issue an Order reducing Mr. Halliburton's sentence to time served with the balance of said sentence to be served on house arrest. As grounds therefore, Undersigned counsel would state the following:

1. Pursuant to the First Step Act, the Court has jurisdiction to determine whether "extraordinary and compelling reasons" warrant a sentence reduction after consideration of sentencing factors pursuant to Title 18 USC section 3553(a) and the Sentencing Commission's policy statement on reduction of sentence in U.S.S.G. 1G1.13. If the Court were to grant this Motion, Mr. Halliburton would reside with his wife and 4 children located at 1570 West Forest Avenue, Decatur, IL 62526, he would have his own separate bedroom and bathroom and his own separate entrance for social distancing purposes. All personal and medical expenses will be borne by Mr. Halliburton's wife, Ms. Dara Halliburton, including healthcare, clothing and

1

food. Clearly these living conditions and reentry plan will prevent recidivism and maximize public safety, since the conditions upon which the inmate would be confined upon release would present a lower risk of contacting the COVID-19 virus than the inmate would face in his BOP facility. It is in fact evident that if a 42 year old man suffering from the medical problems that Mr. Halliburton suffers from were unable to be released compassionately, he would face a serious risk of death is he were to contract the COVID-19 virus in FCI-Forest City Low, where social distancing is not as likely as it would be in the conditions at his own home described above.

2. On December 21, 2018, the President signed the First Step Act into law. Among the criminal justice reforms, Congress amended 18 USC section 3582(c)(1)(A)(i) to provide the Sentencing Judge jurisdiction to consider a defense motion for reduction of sentence under the subsection "[when] the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [(BOP)] to bring a motion on the defendant's behalf" (First Step Act of 2018 at 119).

3. Mr. Halliburton exhausted all of his administrative remedies by seeking compassionate release through the warden at FCI-Forest City Low. On April 16, 2020 Mr. Halliburton submitted through counsel a letter addressed to Warden Dewayn Hendrix requesting compassionate release (see Exhibit A attached hereto). As of the date of the filing of this motion, May 16, 2020, 30 days have passed without any response from Warden Dewayn Hendrix. Therefore, Mr. Halliburton has exhausted his administrative remedies.

4. The amendment to section 3582 (c)(1)(A) provides defendants like Mr. Halliburton an opportunity to file this motion after fully exhausting his administrative appeal of

the BOP's decision not to file this motion for compassionate release. This change to the statute gave the District Judge " ...the ability to grant a prisoner's motion for compassionate release even in the face of BOP opposition ..." *United States v. Young*, 2020 WL 1047815, at 5 (M.D. Tenn. March 3, 2020). The substantive criteria of section 3582(c)(1)(A)(i) remained the same.

5.  The Court has discretion to reduce the term of imprisonment imposed in this case based on section 3582(c)(1)(A)(i), which states in relevant part that the Court "may reduce the term of imprisonment, after consideration of the factors set forth in section 3553(a) to the extent they are applicable, if it finds that extraordinary and compelling reasons warrant such a reduction(.)" Pursuant to the requirements of Title 28 USC section 994(t), as authorized by 28 U.S.C. section 994(a)(2)(C), the Sentencing Commission promulgated a policy statement that sets out the criteria and examples of "extraordinary and compelling reasons" in U.S.S.G. 1b 1.13 that includes the Defendant's circumstances:

> Congress never defined the term "extraordinary and compelling reasons", except to state that "(r)ehabilitation...alone does not suffice." 18 U.S.C. section 994(t).

6.  Rather, Congress directed the Sentencing Commission to define the term. Id. The Commission did so prior to the passage of the First Step Act, but has not since updated the policy statement. See U.S.S.G. section 1B1.13; the Commission enumerated three specific reasons "that qualify as extraordinary and compelling": (A) terminal illness diagnoses or serious medical, physical or mental impairments from which a defendant is unlikely to recover, and which "substantially diminish" the defendant's capacity for self-care in prison; (B) aging related health decline where a

3

defendant is over 65 years old and has served at least ten years or 75% of his sentence; or (C) two family related circumstances (i) death/incapacitation of the only caregiver for the inmates' children or (ii) incapacitation of the inmate's spouse, if the inmate is the spouse's only caregiver. (See id. cmt. n.1. (A)-(C)). The policy statement also added a catch-all provision that gave the Director of the BOP the authority to determine if there exist in the defendant's case an extraordinary and compelling reason other than, or in combination with "the other three categories". Id cmt. n.1 (D).

7. Thus, implicitly recognizing that it is impossible to package all "extraordinary and compelling" circumstances into three neat boxes, the Commission made subsections (A)-(C) non-exclusive by creating a catch all category that recognized that other "compelling reasons" could exist. See *United States v. Urkevich*, 2019 WL 60373391, at 3 (D. Neb, Nov 14, 2019); (noting that section 1 B 1.13 never "suggests that [its] list [of criteria] is exclusive; *United States v Beck*,_F.Supp.3d_2019 WL2716505, (M.D.N.C June 8, 2019) (Read as a whole, the application notes suggest a flexible approach...[and] recognize that the examples listed in the application note do not capture all extraordinary and compelling circumstances").

8. As part of the First Step Act, signed by President Trump on December 21, 2018, Congress removed a major obstacle from judicial review of sentences to determine whether conditions listed under Compassionate Release made a sentence reduction "sufficient, but not greater than necessary" under Title 18 U.S.C. 3553 (a). Under this Act, the Court is afforded jurisdiction to make the 3553(a) determination of whether defendant's years in prison, in light of his [or her] age, illnesses and the debilitation conditions, "is sufficient, but not greater than necessary", to accomplish the goals of sentencing.

9.  On March 26, 2020, Attorney General William Barr, directed the BOP in a
    memorandum entitled "Prioritization of Home Confinement As Appropriate in
    Response to COVID-19 Pandemic" to transfer inmates to home confinement where
    appropriate to decrease the risks to their health with respect to some at risk inmates
    who are non-violent and pose minimal likelihood of recidivism and who might be
    safer serving their sentences in home confinement rather than in BOP facilities (page
    1 March 26, 2020 Memorandum). General Barr directed the BOP to consider the
    totality of circumstances for each individual inmate, the statutory requirements for
    home confinement and the following non exhaustive list of discretionary factors
    including:

    a)  The age and vulnerability of the inmate to COVID 19, in accordance with the
        Centers for disease Control and Prevention (CDC) guidelines:

        a.  The security level of the facility currently holding the inmate, with priority
            given to inmates residing in low and minimum security facilities;

        b.  The inmate's conduct in prison, with inmates who have engaged in violent
            or gang related satiety in prison or who have incurred a BOP violation
            within the last year not receiving priority treatment under this
            Memorandum;

        c.  The inmate's score under PATTERN (the Prisoner Assessment Tool
            Targeting Estimated Risk and Need) with inmates who have anything
            above minimum score not receiving priority treatment under this
            Memorandum;

        d.  Whether the inmate has demonstrated a verifiable re-entry plan that will
            prevent recidivism and maximize public safety, including verification that

the conditions under which the inmate would be confined upon release

would present a lower risk of contracting COVID-19, than the inmate

would face in his or her BOP facility;

e. The inmate's crime of conviction and assessment of the danger posed by

the inmate to the community; some offenses, such as sex offenses will

render an inmate ineligible for home detention; other serious offenses

should weigh more heavily against consideration for home detention.

(Memorandum of Attorney General Barr at Page 1 and 2).

10. General Bar directed the BOP to consider these factors as well assessing the inmate's

factors for severe COVID-19 illness and the risks of COVID-19 at the inmate's prison

facility and the risk of COVID-19 at the location to which the inmate seeks release,

based on CDC guidance (Page 2 Memorandum).

11. On April 3, 2020, Attorney General Barr issued an additional directive to the FBOP

concluding that the CARES ACT (passed by Congress on March 26, 2020),

authorized him to expand the cohort of inmates who can be considered for home

release "upon my finding that emergency conditions are materially affecting the

functioning of the Bureau of Prisons. I hereby make that finding and direct that as

detailed below you give priority in implementing these new standards to the most

vulnerable inmates at the most affected facilities, ..."

12. Thus, Attorney General Barr indicated "And now that I have exercised my authority

under the CARES Act, your review should include all at risk-inmates-not only those

who were previously eligible for transfer". Attorney General Barr also made it clear

that the BOP was authorized to transfer inmates to home confinement even if

electronic monitoring "is not available so long as BOP determines in every such

instance that doing so is appropriate and consistent with our obligation to protect public safety".

13. Thus, it is clear that pursuant to these two Memorandums the Court has the authority to exceed the limitations of the First Step Act in fashioning its decision concerning the remedy of Home Confinement with respect to this Motion.

Therefore, Mr. Halliburton meets the requirements of the first step act as modified by the CARES Act and Attorney General Barr's memorandums to be released to home confinement.

## THE DEFENDANT MEETS THE REQUIREMENTS OF THE FIRST STEP ACT AS MODIFIED BY THE CARES ACT AND ATTORNEY GENERAL BARR'S MEMORANDUMS TO BE RELEASED TO HOME CONFINEMENT

14. The Attorney General's March 26, 2020 Memo expressly outlines the criteria that the BOP should assess when evaluating whether to transfer an inmate to home confinement and grant compassionate release due to increased risks to the inmate's health. Given his medical history and current health condition Mr. Halliburton meets the Memorandum's criteria qualifying him for home confinement and compassionate release under current circumstances.

15. Additionally, as set forth in his April 3, 2020 Memorandum the Attorney General directed the BOP to immediately review all inmates who have COVID-19 risk factors as established by the Centers for Disease control (hereinafter CDC).

16. As a threshold concern, the CDC considers the most vulnerable people to the COVID-19 virus to include (a) people of 65 years of age or over; and (b) people with a condition that affect their lungs, kidney, immune system or other serious chronic medical conditions.

17. Mr. Halliburton is 42 years old, but his age should not be determinative of this Motion in view of his medical condition.

18. Mr. Halliburton suffers from a condition that has affected his lungs as well as other serious medical conditions. Mr. Halliburton suffers from a myriad of illnesses as outlined in this submission, including, asthma, obesity and coronary problems as reflected by his medical records from Decatur Memorial Hospital in Decatur, Illinois. Mr. Halliburton's past medical history includes pulmonary disease and asthma (see medical records attached to Exhibit A).

19. Full details of Mr. Halliburton's medical history and currently treated conditions are contained within the FCI's own medical records and files for review by the appropriate BOP medical professional.

20. Mr. Halliburton also meets the criteria in Attorney General Barr's Memorandum of March 26, 2020 (See page 1 and 2 of the Memo):

   a.  His age and vulnerability to COVID-19:

- He is 42 years old but suffers from myriad of illnesses detailed in this Motion.

   b.  The security level of the facility currently holding the inmate, with priority given to the inmate residing in low minimum security facilities:

- FCI-Forest City Low where Mr. Halliburton, is incarcerated is a low security facility.

   c.  The inmates conduct in prison with inmates who have engaged in violent or gang related activity or who have incurred a BOP violation within the last year, not receiving priority treatment under this Memorandum:

- Mr. Halliburton 's conduct and behavior while incarcerated at FCI-Forest City Low has been exemplary with no reported incidents infractions or violations.

d.   The inmates score under PATTERN with inmates who have anything above a minimum score not receiving priority treatment under this memorandum:

- Any instances of misconduct committed by Mr. Halliburton have been minor in nature and should not disqualify him pursuant to this Motion.

e.   Whether the inmate has a demonstrated a verifiable re-entry plan that will prevent recidivism and maximize public safety including verification that the conditions under which the inmate will be confined upon release would present a lower risk of contracting COVID-19 than the inmate would face in his or her BOP facility:

- Mr. Halliburton would reside with his wife and 4 children located at 1570 West Forest Avenue, Decatur, IL 62526, he would have his own separate bedroom and bathroom and his own separate entrance for social distancing purposes. All personal and medical expenses will be borne by Mr. Halliburton's wife, Ms. Dara Halliburton, including healthcare, clothing and food. Clearly these living conditions and reentry plan will prevent recidivism and maximize public safety, since the conditions upon which the inmate would be confined upon release would present a lower risk of contacting the COVID-19 virus than the inmate would face in his BOP facility.

f.   The inmate's crime of conviction and assessment of danger posed by the inmate to the community. Some offenses such as sex offenses will render an inmate ineligible for home detention. Other serious offenses should with more heavily against consideration of home detention.

- Mr. Halliburton has not been convicted of any sex offense, although he was convicted of selling and distributing crack cocaine base and

marijuana, in violation of 21 USC §841. Mr. Halliburton received a 120 month sentence of imprisonment to run concurrently with an 8 year term of supervised release imposed in case number 98-cr-20042. Mr. Halliburton has been imprisoned since he was detained on April 11, 2017 for over 3 years.

21. It is notable that as of May 16, 2020, 2280 federal inmates and 283 BOP staff have confirmed positive results for COVID-19 nationwide, 56 federal inmates have died. There have been 256 positive tests for inmates and 1 positive test finding for staff at FCI- Forest City Low. (See www.bop.gov/coronavirus/index.jsp).

22. There are a multitude of cases in which, Inmates, like Mr. Halliburton, have had compassionate release granted to them after being sentenced or who have been released pending trial or pending sentencing because of this pandemic. See *United States v. Scott*; 17-CR-00630 (SDNY 2020), (where Judge Edgardo Ramos released the defendant who had been jailed earlier after conviction and pending sentencing from the Federal Detention Center in Miami. Judge Ramos cited the Defendant's heart health issues and an alleged lack of access to proper medicine in allowing him to leave FDC Miami which is currently on lockdown and being manned by a "skeleton crew" amid the outbreak of COVID-19).

23. Other cases as well support the granting of this Motion for Reduction of Mr. Halliburton 's sentence and his compassionate release; see *United States v. Avenatti* 8:19-CR-61 (C.D Cal. Mar 25, 2020); *United States v. Michaels* 8:16-cr-76-JVS (C.D. Cal Mar 26, 2020); *United States v. Harris*, No:19-cr-356 (D.D.C. Mar 26, 2020); *Xochhua-James v. Barr*, No.18-71460 (9th Cir. Mar 23, 2020); *United States v. Jaffee*, No: 19-cr-88 (D D.C. March 26, 2020); *United States v. Garlock*, No: 18-

Cr-00418-VC-1, 2020 WL 1439980 (N.D. Cal. March 25, 2020); *United States v. Perez,* No: 19-CR 297 (PAE), 2020 WL 1329225; *United States v. Stephens*, No:15-cr-95 (AJN), 2020 WL1295155 (SDNY, March 19, 2020); In *re Manrique*, No. 19-mj-71055-MAG-1 (TSH), 2020 WL1307109 (N.D.Cal,2020). *United States v. Copeland*, No: 2:05-CR-135 DCM (D.S.C. Mar 24, 2020).

Moreover, because Mr. Halliburton's warden has not responded to his request for compassionate release for 30 days, this Court has jurisdiction to decide this Motion, see *United States v. Lacy*, 15-CR-30038(C.D. ILL., May 1,2020).

For the foregoing reasons this Court should grant Mr. Halliburton's Motion for Reduction of his sentence and allow him to reside in his residence on home confinement under appropriate conditions.

Dated: April 16, 2020.

Respectfully submitted,
**Michael B. Cohen, Esq.**
Michael B. Cohen, Esq.
Florida Bar No:  210196
Admitted to the Central District of Illinois
6400 North Andrews Ave., Ste 505
Fort Lauderdale, Florida 33309
Ph (954) 928-0059
Email: mcohenlaw@aol.com

# EXHIBIT A

# MICHAEL B. COHEN, P.A.

**ATTORNEY AT LAW**
6400 NORTH ANDREWS AVENUE
FIFTH FLOOR, SUITE 505
FORT LAUDERDALE, FL 33309
TELEPHONE (954) 928-0059   FAX (954) 928-0829
EMAIL ADDRESS: MCOHENLAW@AOL.COM

MICHAEL BRUCE COHEN
BOARD CERTIFIED
CRIMINAL TRIAL LAWYER
FLORIDA BOARD OF
LEGAL SPECIALIZATION
AND EDUCATION

MEMBER OF THE BARS
OF THE SUPREME COURT
OF THE UNITED STATES,
FLORIDA, DISTRICT OF COLUMBIA
AND NEW YORK

April 16, 2020

Via Certified USPS Mail Facsimile E Mail

Warden Dewayne Hendrix
FCI Forrest City Low
1400 Dale Bumpers Road
Forrest City, Ar. 72335

Fax (870)-494-4496

Email: FOR/ExecAssistant@bop.gov

Re:     Inmate Keith Halliburton
        Register No: 11406-026
        Request for Compassionate Release

Dear Warden Hendrix:

I am writing on behalf of my client, Dara Halliburton ("Mrs. Halliburton") requesting the immediate compassionate release of her husband Keith Halliburton (Register No: 11406-026) ("Mr. Halliburton"), pursuant to the Attorney General Barr's Memorandum for Director of Bureau of Prisons (the Memos) dated March 16, 2020 and April 3, 2020, regarding the prioritization of home confinement as the most appropriate response to the COVID-19 virus pandemic for certain high risk Federal inmates. This letter respectfully requests your immediate attention to Mr. Halliburton's request for compassionate release.

As you are aware Warden, Attorney General Barr's Memo recommends, the BOP to promptly grant and effectuate the compassionate release of certain qualified Federal inmates who are inherently more susceptible to contracting the COVID-19 virus due to their underlying health risks and medical conditions. Under the Memo's well-defined evaluation guidelines, Mr. Halliburton, falls squarely within the class of inmates that the directive aims to protect, and he should be granted compassionate release subject to home confinement as soon as possible.

1

The Attorney General's March 26, 2020 Memo expressly outlines the criteria that the BOP should assess when evaluating whether to transfer an inmate to home confinement and grant compassionate release due to increased risks to the inmate's health. Given his medical history and current health conditions Mr. Halliburton meets and exceeds the Memo's criteria unquestionably qualifying him for home confinement and compassionate release under the current circumstances.

Additionally, the Attorney General's Memorandum of April 3, 2020 directs the BOP to Immediately Maximize Appropriate Transfers to Home Detention of All Appropriate Inmates at certain Institutions and at other similarly situated BOP Facilities where COVID-19 is Materially Affecting Operations.

As set forth in this April 3, 2020 Memo, the Attorney General directed the BOP to immediately review all inmates who have COVID-19 risk factors as established by the Centers for Disease Control (CDC). Furthermore, the Attorney General stated in pertinent part:

"And now I have exercised my authority under the CARES Act, your review should include all at-risk inmates-not only those who were previously eligible for transfer and immediately process them following a 14 day quarantine at appropriate BOP facilities, or, in appropriate cases subject to your case by case discretion, in the residence to which the inmate is being transferred. Your assessment of these inmates should thus be guided by the factors in my March 26, 2020 Memorandum, understanding, though, that inmates with a suitable confinement plan will generally be appropriate candidates for home confinement rather than continued detention at institutions in which COVID-19  is materially affecting their operations... I, therefore, authorize BOP to transfer inmates to home confinement even if electronic monitoring is not available, so long as BOP determines in every such instance that doing so is appropriate and consistent with our obligation to protect public safety. Given the speed with which this disease has spread through the general public, it is clear that time is of the essence. Please implement this Memorandum as quickly as possible ..."

As a threshold concern, the CDC considers the most vulnerable people to the COVID-19 virus to include (a) people of 65 years of age or over; and (b) people with a condition that affect their lungs, heart, kidney, immune system or other serious chronic medical conditions. Although Mr. Halliburton is 42 years old, his age is of secondary consequence to be considered in connection with his medical conditions.

Specifically, you should consider the following discretionary factors that weigh heavily in favor of granting Mr. Halliburton home confinement and an immediate compassionate release. These factors are delineated below in sequential order in connection with the Attorney General's Memorandums of March 26, 2020 and April 3, 2020.

**The age and vulnerability of the inmate to COVID-19, in accordance with the CDC Guidelines (See page 1 Memo of Attorney General Bar).**

Mr. Halliburton is 42 years old, but he has severe health problems.

2

Moreover, Mr. Halliburton suffers from a myriad of illnesses, as outlined in this submission including asthma, obesity, and coronary problems. As reflected by his medical records from Decatur Memorial Hospital in Decatur, Illinois, Mr. Halliburton's past medical history includes, pulmonary disease and asthma (See Exhibit A attached hereto).

Full details of Mr. Halliburton's medical history and currently treated conditions are contained within the FCI's own medical records and files for review by the appropriate BOP medical professional.

**The Security level of the facility currently holding the inmate, with priority given to the inmate residing in low minimum-security facilities (See memorandum of March 26 of Attorney General Barr at page 2).**

**FCI Forrest City Low is a low security facility.** The Attorney General's Memorandum expressly states (see above), that when granting home confinement, "priority [be] given to inmates residing in a low and minimum-security facilities".

**The inmates conduct in prison with inmates who have engaged in violent or gang related activity or who have incurred a BOP violation within the last year, not receiving priority treatment under this Memorandum (See Page 2 of Attorney General Bar's Memorandum of March 26)**.

Although, Mr. Halliburton has had two minor incidents of misconduct, he has not been affiliated with or otherwise engaged in any violent or gang-related activity at any point during his incarceration.

**The inmates score under The Prisoner Assessment Tool Targeting  Estimated Risk and Need (PATTERN) with inmates who have anything above a minimum score not receiving priority treatment under this Memorandum (of March 26, 2020).**

Nor do me we believe that Mr. Halliburton should be disqualified for a positive treatment for compassionate release under this factor.

After reviewing Mr. Halliburton's Administrative record and Medical records, it is clear that Mr. Halliburton should be favorably considered for compassionate release. Although Mr. Halliburton is 42 years of age, he has severe asthma for which he must use an inhaler and coronary conditions which make him particularly susceptible to the COVID-19 virus. His conviction for selling and distribution of Cocaine, is a non-violent offense, and he is not a sex offender. Mr. Halliburton was sentenced to 120 months in the Federal Bureau of Prisons and he has been incarcerated since April 11th, 2017.

**Whether the inmate has a demonstrated and verifiable re-entry plan, that will prevent recidivism and maximize public safety, including verification that the conditions under which the inmate will be confined upon release would present a lower risk of contracting COVID-19, than the inmate would face in his or her BOP facility (Page 2 Memorandum of the Attorney General Barr dated March 26, 2020).**

3

If Mr. Halliburton was granted compassionate release and home detention, he would reside with his wife Mrs. Halliburton and four children at his residence located at 1570 West Forest Ave, Decatur, Illinois, 62526. He would have his own separate bedroom and bathroom, and his own separate way to enter the residence for social distancing purposes.

All personal and medical expenses will be born by Mr. Halliburton's wife, Mrs. Dara Halliburton, including health care, clothing, and food.

Clearly, these living conditions and re-entry plan will prevent recidivism and maximize public safety since the conditions upon which the inmate would be confined upon release would present a lower risk of contacting the COVID-19 virus than the inmate would face in his BOP facility. It is in fact evident that if a 42 year old man suffering from the medical problems that Mr. Halliburton suffers from, were unable to be released compassionately, he would face a serious risk of death if he were to contract the COVID-19 virus in FCI Forrest City, where social distancing is not as likely as it would be in the conditions at his home described above.

**The inmate's crime of conviction and assessment of the danger posed by the inmate to the community. Some offenses such as sex offenses will render an inmate ineligible for home detention. Other serious offenses should weigh more heavily against consideration of home detention (page 2 Attorney General Barr's Memorandum of March 26, 2020)**.

Mr. Halliburton's crime of distribution of Cocaine, a non-violent offense, does not render him ineligible for home confinement. Nor does Mr. Halliburton's behavior or track record pose any danger to the community if he was granted compassionate release.

Notwithstanding the recent efforts to attempt to isolate inmates at FCI Forrest City for the next 14 days, these actions along with similar measures likely to be taken in the future, do not (and will not) offer sufficient protection to highly susceptible immune compromised individuals like Mr. Halliburton. Even in light of any "no contact " lockdowns, the given inmate routines of FCI Forrest City render consistent social distancing practices impossible. To this end, Mr. Halliburton will remain at high risk of contracting or spreading COVID-19 virus so long as he remains at your facility. Moreover, the most recent information obtained from the BOP website as of April 15th, 2020, indicates there are 449 federal inmates and 280 BOP staff who have tested positive for the COVID-19 virus, and in fact 16 inmates have died from this disease. Most strikingly, 47 inmates at Forrest City Low and 2 members of your staff have tested positive for the COVID-19 virus, therefore requiring that Mr. Halliburton's case be given priority treatment in light of the conditions at your institution and Attorney General Barr's Memo.

His underlying medical conditions further support a compelling need for home confinement and his compassionate release, as he is more likely than most inmates to contract the virus and suffer potentially life-threatening complications as a result. Compassionate release and home confinement are therefore both appropriate and necessary.

Based on the totality of the circumstance and the foregoing reasons, you have the discretion to grant compassionate release and home confinement for Mr. Halliburton, because

doing so will significantly decrease Mr. Halliburton's exposure to the COVID-19 virus and reduce his risk of life threatening complications from this disease. If granted Mr. Halliburton' s home confinement would be subject to any procedural requirements or additional public safety precautions prescribed by the Memos or the BOP, if deemed necessary. By facilitating his immediate release and granting Mr. Halliburton home confinement, you will likely save his life since the COVID-19 virus has reached your facility of FCI Forrest City.

If you need to discuss and further details of this matter regarding Mr. Halliburton, please contact me directly and immediately.

Thank you for your anticipated time and consideration of this urgent request.

Respectfully submitted,

_____
Michael B. Cohen, Esq.

DECATUR MEMORIAL HOSPITAL
2300 N EDWARD ST
DECATUR IL 62526-4163
Laboratory Results

Halliburton, Keith A
MRN: 05779785, DOB: 4/12/1978, Sex: M
Visit date: 12/8/2017

## BASIC METABOLIC PANEL W/ CALCIUM TOTAL
**Results**
Normal

Status: **Final result**
(Collected: 12/8/2017 13:18)

### BASIC METABOLIC PANEL W/ CALCIUM TOTAL [310471633] (Normal)

Resulted: 12/08/17 1905, Result status: Final result

Resulting lab: DECATUR MEMORIAL HOSPITAL

**Specimen Information**

| Type | Source | Collected On |
|------|--------|-------------|
| Blood | — | 12/08/17 1318 |

**Components**

| Component | Value | Reference Range | Flag | Lab |
|-----------|-------|-----------------|------|-----|
| SODIUM | 143 | 133 - 145 mmol/L | — | DMH |
| POTASSIUM | 3.9 | 3.5 - 5.1 mmol/L | — | DMH |
| CHLORIDE | 106 | 96 - 108 mmol/L | — | DMH |
| CO2, VENOUS | 27 | 21 - 32 mmol/L | — | DMH |
| ANION GAP | 13.9 | 10.0 - 20.0 mmol/L | — | DMH |
| GLUCOSE | 98 | 70 - 105 mg/dL | — | DMH |
| BUN | 15 | 6 - 19 mg/dL | — | DMH |
| CREATININE, BLOOD | 1.10 | 0.50 - 1.30 mg/dL | — | DMH |
| BUN/CREATININE RATIO | 14 | 12 - 20 ratio | — | DMH |
| CALCIUM | 8.5 | 8.4 - 10.2 mg/dL | — | DMH |

**Testing Performed By**

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|--------------------|------|----------|---------|------------------|
| 71 - DMH | DECATUR MEMORIAL HOSPITAL | Mark Clarke, MD | 2300 North Edward Street Decatur IL 62526 | 08/09/17 1514 - Present |

## COMPLETE BLOOD COUNT (CBC) WITH DIFF
**Results**
Abnormal !

Status: **Final result**
(Collected: 4/20/2018 12:29)

### Linked Results

| Procedure | Abnormality | Status |
|-----------|-------------|--------|
| CBC WITH AUTO DIFFERENTIAL | Abnormal ! | Final result |

### COMPLETE BLOOD COUNT (CBC) WITH DIFF [331066609]

### CBC WITH AUTO DIFFERENTIAL [331066611] (Abnormal)

Resulted: 04/20/18 1759, Result status: Final result

Resulting lab: DECATUR MEMORIAL HOSPITAL

**Specimen Information**

| Type | Source | Collected On |
|------|--------|-------------|
| Blood | — | 04/20/18 1229 |

**Components**

| Component | Value | Reference Range | Flag | Lab |
|-----------|-------|-----------------|------|-----|
| WBC | 5.93 | 3.90 - 11.00 10(3)/mcL | — | DMH |
| RBC | 4.40 | 4.20 - 5.80 10(6)/mcL | — | DMH |
| HEMOGLOBIN (HGB) | 13.1 | 12.6 - 17.4 g/dL | — | DMH |
| HEMATOCRIT (HCT) | 39.8 | 39.8 - 52.2 % | — | DMH |
| MCV | 90.5 | 80.0 - 100.0 fL | — | DMH |
| MCH | 29.8 | 26.5 - 33.9 pg | — | DMH |
| MCHC | 32.9 | 31.5 - 36.0 g/dL | — | DMH |
| PLATELET COUNT | 218 | 140 - 445 10(3)/mcL | — | DMH |
| MPV | 10.0 | >=0.0 fL | — | DMH |
| RDW | 11.3 | 12.0 - 15.0 % | L | DMH |
| NEUTROPHILS | 60.4 | % | — | DMH |
| LYMPHOCYTES | 30.5 | % | — | DMH |
| MONOCYTES | 6.2 | % | — | DMH |
| EOSINOPHILS | 2.5 | % | — | DMH |
| IMMATURE GRANULOCYTE % | 0.2 | % | — | DMH |
| BASOPHILS | 0.2 | % | — | DMH |
| ABSOLUTE NEUTROPHILS | 3.58 | 1.40 - 7.30 10(3)/mcL | — | DMH |

DECATUR MEMORIAL HOSPITAL
2300 N EDWARD ST
DECATUR IL 62526-4163
Laboratory Results

Halliburton, Keith A
MRN: 05779785, DOB: 4/12/1978, Sex: M
Visit date: 4/20/2018

---

**COMPLETE BLOOD COUNT (CBC) WITH DIFF [331066609] (continued)**

| | | | | |
|---|---|---|---|---|
| ABSOLUTE LYMPHOCYTES | 1.81 | 1.30 - 2.90 10(3)/mcL | — | DMH |
| ABSOLUTE MONOCYTES | 0.37 | 0.10 - 0.80 10(3)/mcL | — | DMH |
| ABSOLUTE EOSINOPHIL | 0.15 | 0.00 - 0.30 10(3)/mcL | — | DMH |
| ABSOLUTE BASOPHILS | 0.01 | 0.00 - 0.10 10(3)/mcL | — | DMH |
| ABSOLUTE IMMATURE GRANULOCYTE | 0.01 | 0.00 - 0.10 10 (3) mcL. | — | DMH |
| NRBC PER 100 WBC | 0.0 | 0.0 - 0.0 % | — | DMH |
| ABSOLUTE NRBC | 0.00 | 10 (3) mcL. | — | DMH |

**Testing Performed By**

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 71 - DMH | DECATUR MEMORIAL HOSPITAL | Mark Clarke, MD | 2300 North Edward Street Decatur IL 62526 | 08/09/17 1514 - Present |

---

## CMP (COMPREHENSIVE METABOLIC PANEL)
**Results**

Abnormal !

Status: **Final result**
(Collected: 4/20/2018 12:29)

---

**CMP (COMPREHENSIVE METABOLIC PANEL) [331066610] (Abnormal)**   Resulted: 04/20/18 1809, Result status: Final result

Resulting lab:  DECATUR MEMORIAL HOSPITAL
Narrative:

Venipuncture should occur prior to sulfasalazine and/or sulfapyridine administration due to the potential for falsely depressed results for ALT and AST.  Glucose can be falsely depressed after administration of sulfasalazine, and falsely elevated with administration of sulfapyridine.

**Specimen Information**

| Type | Source | Collected On | | |
|---|---|---|---|---|
| Blood | — | 04/20/18 1229 | | |

**Components**

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| SODIUM | 137 | 133 - 145 mmol/L | — | DMH |
| POTASSIUM | 4.2 | 3.5 - 5.1 mmol/L | — | DMH |
| CHLORIDE | 104 | 96 - 108 mmol/L | — | DMH |
| CO2, VENOUS | 29 | 21 - 32 mmol/L | — | DMH |
| ANION GAP | 8.2 | 10.0 - 20.0 mmol/L | L | DMH |
| GLUCOSE | 106 | 70 - 105 mg/dL | H | DMH |
| BUN | 18 | 6 - 19 mg/dL | — | DMH |
| CREATININE, BLOOD | 1.40 | 0.50 - 1.30 mg/dL | H | DMH |
| BUN/CREATININE RATIO | 13 | 12 - 20 ratio | — | DMH |
| TOTAL PROTEIN | 7.8 | 6.2 - 8.4 g/dL | — | DMH |
| ALBUMIN | 3.9 | 3.5 - 5.0 g/dL | — | DMH |
| CALCIUM | 8.7 | 8.4 - 10.2 mg/dL | — | DMH |
| T BILI | 0.6 | 0.0 - 1.0 mg/dL | — | DMH |
| SGOT (AST) | 23 | 0 - 37 U/L | — | DMH |
| SGPT (ALT) | 52 | 12 - 55 U/L | — | DMH |
| ALKALINE PHOSPHATASE | 87 | 39 - 117 U/L | — | DMH |
| GFR, EST. NONAFRICAN | 60 | — | — | DMH |

Comment:

*Reference interval for MDRD GFR:
GFR >=60:        Satisfactory kidney function
GFR <60:         Chronic kidney disease
GFR <15:         Kidney failure
Estimated GFR may be less reliable in patients >70yr, pregnant women, patients with serious comorbid conditions, or patients with extremes of body size, muscle mass, or nutritional status.
Revised 3/26/08 (National Kidney Disease Education Program)*

| | | | | |
|---|---|---|---|---|
| GFR, EST. AFRICAN | >60 | >=60 | — | DMH |

Comment:

*Reference interval for MDRD GFR:
GFR >=60:        Satisfactory kidney function
GFR <60:         Chronic kidney disease
GFR <15:         Kidney failure
Estimated GFR may be less reliable in patients >70yr, pregnant women, patients with serious comorbid conditions, or patients with extremes of body size, muscle mass, or nutritional status.
Revised 3/26/08 (National Kidney Disease Education Program)*

---

DECATUR MEMORIAL HOSPITAL
2300 N EDWARD ST
DECATUR IL 62526-4163
Laboratory Results

Halliburton, Keith A
MRN: 05779785, DOB: 4/12/1978, Sex: M
Visit date: 4/20/2018

## Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 71 - DMH | DECATUR MEMORIAL HOSPITAL | Mark Clarke, MD | 2300 North Edward Street Decatur IL 62526 | 08/09/17 1514 - Present |

## COMPLETE BLOOD COUNT (CBC) WITH DIFF
**Results**

Abnormal ↑

Status: **Final result**
(Collected: 4/20/2018 12:29)

## Linked Results

| Procedure | Abnormality | Status |
|---|---|---|
| CBC WITH AUTO DIFFERENTIAL | Abnormal ↑ | Final result |

**CBC WITH AUTO DIFFERENTIAL [331066611] (Abnormal)**    Resulted: 04/20/18 1759, Result status: Final result

Resulting lab:  DECATUR MEMORIAL HOSPITAL

### Specimen Information

| Type | Source | Collected On |
|---|---|---|
| Blood | — | 04/20/18 1229 |

### Components

| Component | Value | Reference Range | Flag | Lab |
|---|---|---|---|---|
| WBC | 5.93 | 3.90 - 11.00 10(3)/mcL | — | DMH |
| RBC | 4.40 | 4.20 - 5.80 10(6)/mcL | — | DMH |
| HEMOGLOBIN (HGB) | 13.1 | 12.6 - 17.4 g/dL | — | DMH |
| HEMATOCRIT (HCT) | 39.8 | 39.8 - 52.2 % | — | DMH |
| MCV | 90.5 | 80.0 - 100.0 fL | — | DMH |
| MCH | 29.8 | 26.5 - 33.9 pg | — | DMH |
| MCHC | 32.9 | 31.5 - 36.0 g/dL | — | DMH |
| PLATELET COUNT | 218 | 140 - 445 10(3)/mcL | — | DMH |
| MPV | 10.0 | >=0.0 fL | — | DMH |
| RDW | 11.3 | 12.0 - 15.0 % | L | DMH |
| NEUTROPHILS | 60.4 | % | — | DMH |
| LYMPHOCYTES | 30.5 | % | — | DMH |
| MONOCYTES | 6.2 | % | — | DMH |
| EOSINOPHILS | 2.5 | % | — | DMH |
| IMMATURE GRANULOCYTE % | 0.2 | % | — | DMH |
| BASOPHILS | 0.2 | % | — | DMH |
| ABSOLUTE NEUTROPHILS | 3.58 | 1.40 - 7.30 10(3)/mcL | — | DMH |
| ABSOLUTE LYMPHOCYTES | 1.81 | 1.30 - 2.90 10(3)/mcL | — | DMH |
| ABSOLUTE MONOCYTES | 0.37 | 0.10 - 0.80 10(3)/mcL | — | DMH |
| ABSOLUTE EOSINOPHIL | 0.15 | 0.00 - 0.30 10(3)/mcL | — | DMH |
| ABSOLUTE BASOPHILS | 0.01 | 0.00 - 0.10 10(3)/mcL | — | DMH |
| ABSOLUTE IMMATURE GRANULOCYTE | 0.01 | 0.00 - 0.10 10 (3) mcL. | — | DMH |
| NRBC PER 100 WBC | 0.0 | 0.0 - 0.0 % | — | DMH |
| ABSOLUTE NRBC | 0.00 | 10 (3) mcL. | — | DMH |

## Testing Performed By

| Lab - Abbreviation | Name | Director | Address | Valid Date Range |
|---|---|---|---|---|
| 71 - DMH | DECATUR MEMORIAL HOSPITAL | Mark Clarke, MD | 2300 North Edward Street Decatur IL 62526 | 08/09/17 1514 - Present |

## END OF REPORT

**Decatur Memorial Hospital**
**EMERGENCY FLOW SHEET RECORD**
**Name: HALLIBURTON, KEITH A  Age: 36Y  MR: 0000062919  Acct: 1420100130**

| VITAL SIGNS | MAR |
|---|---|
| TIME | 7/20/2014 14:06 |
| BP | 123/80 (R Arm) |
| PULSE | 72 (Brachial) |
| RESP | 16 |
| TEMP | 97.7 (Oral) |
| PAIN | 0 |
| O2 SAT | 97% on RA |

# DECATUR MEMORIAL HOSPITAL
# EMERGENCY ROOM DOCUMENT

**HALLIBURTON, KEITH A**
DOB: 4/12/1978 M36
Wt/Ht: 96.62 Kg
MedRec: 0000062919
AcctNum: 1420100130

Patient Data

**Complaint:** Medication refill
**Triage Time:** Sun Jul 20, 2014 14:08
**Urgency:** Fast Track
**Bed:** ED TRIAGE
**Initial Vital Signs:** 7/20/2014 14:06
**BP:**123/80 (R Arm)
**P:**72 (Brachial)
**O2 sat:**97% on RA

**ED Attending:** Munoz, MD, Gabe
**Primary RN:** Riedell, RN, Maryann

**R:**16
**T:**97.7 (Oral)
**Pain:**0

**DIAGNOSIS** (15:35 HMN)
*FINAL:* PRIMARY: **medication refill**.

**ALLERGY** (14:09 MAR)
*Motrin:* Reaction: Hives.
*Aspirin:* Reaction: Hives.

### KNOWN ALLERGIES
*Aspirin:* Reaction: Hives
*Motrin:* Reaction: Hives
*NKA (Unconfirmed)*

**TRIAGE** (14:08 MAR)
*TRIAGE NOTES:* **states has been having trouble with asthma and ran out of inhaler. here for medication refill. alert. resp easy.** (14:38 MAR)
*PATIENT:* AGE: 36, GENDER: male, DOB: Wed Apr 12, 1978, TIME OF GREET: Sun Jul 20, 2014 14:00 by Debby Modesty, PREFERRED LANGUAGE: English, LATEX: NO, MRSA: No, KG WEIGHT: 96.62, Admitting: denies. (14:08 MAR)
NAME: HALLIBURTON, KEITH A, PHONE: (217)412-8561. (14:16 MAR)
*ADMISSION:* URGENCY: Fast Track, TRANSPORT: Walk-in, BED: TRIAGE. (14:08 MAR)
*VITAL SIGNS:* BP 123/80, (R Arm), Pulse 72, (Brachial), Resp 16, Temp 97.7, (Oral), Pain 0, O2 Sat 97%, on RA, Time 7/20/2014 14:06. (14:08 MAR)
*COMPLAINT:* Medication refill. (14:08 MAR)
*TRIAGE/MEDICAL SCREENING EXAM:* **Pain level 0, using numeric pain scoring.** (14:08 MAR)
*PROVIDERS:* TRIAGE NURSE: Maryann Riedell, RN. (14:08 MAR)

### CURRENT MEDICATIONS
No recorded medications

**VITAL SIGNS** (14:08 MAR)
*VITAL SIGNS:* BP: 123/80 (R Arm), Pulse: 72 (Brachial), Resp: 16, Temp: 97.7 (Oral), Pain: 0, O2 sat: 97% on RA, Time: 7/20/2014 14:06.

### HPI  DOCUMENTATION (16:25 GM)
*CHIEF COMPLAINT:*
**I agree with pa-c history,exam,management.**
**No direct face to face contact established.**

### HPI PRESCRIPTION REFILL (22:34 HMN)
*CHIEF COMPLAINT:* **Patient presents for evaluation of needing a prescription refill,** of inhaler.
*HISTORIAN:* History provided by patient.
*LOCATION:* No localizing symptoms.
*QUALITY:* denies pain.

## DECATUR MEMORIAL HOSPITAL
## EMERGENCY ROOM DOCUMENT

**HALLIBURTON, KEITH A**
DOB: 4/12/1978 M36
Wt/Ht: 96.62 Kg
MedRec: 0000062919
AcctNum: 1420100130

*SEVERITY:* **Maximum severity of symptoms mild,** Currently there are no symptoms.
*TIME COURSE:* **Sudden onset of symptoms,** 4 days prior to arrival.
*ASSOCIATED WITH:* No associated symptoms, Denies any other complaints.
*EXACERBATED BY:* Patient's condition exacerbated by **change in weather.**
*RELIEVED BY:* Patient's condition relieved by prescription medications, inhaler.

## PAST MEDICAL HISTORY
*MEDICAL HISTORY:* **Past medical history includes pulmonary disease, asthma.**
(14:08 MAR)
*SURGICAL HISTORY MALE:* **foot surgery.** (14:08 MAR)
*SOCIAL HISTORY:* Patient denies alcohol use, denies drug use, has no smoking history.
(14:08 MAR)
*NOTES:* Nursing records reviewed. (22:35 HMN)

## ROS (22:35 HMN)
*CONSTITUTIONAL:* Historian denies fever.
*EYES:* Historian denies eye redness, eye discharge, vision changes.
*ENT:* Historian denies dysphagia, dysphasia, otalgia, sore throat.
*CARDIOVASCULAR:* Historian denies chest pain.
*RESPIRATORY:* Historian denies shortness of breath.
*GI:* Historian denies abdominal pain, diarrhea, vomiting.
*GENITOURINARY MALE:* Historian denies dysuria, hematuria.
*SKIN:* Historian denies rash.
*NEUROLOGIC:* Historian denies paralysis, paresthesias.

## PHYSICAL EXAM (22:35 HMN)
*CONSTITUTIONAL:* Vital signs reviewed, Patient afebrile, appears non toxic, appears pain free, alert and oriented to person, place and time.
*HEAD:* Head exam included findings of head atraumatic, normocephalic.
*EYES:* Eye exam included findings of eyelids normal to inspection, Pupils equally round and reactive to light.
*ENT:* Ear exam normal, external ear normal, tympanic membranes normal, Nose exam normal, no nasal deformity, Pharynx exam normal, not injected, no swelling, symmetrical, Uvula exam normal, midline, no edema, Mouth exam normal, mucous membranes moist, no drooling, no lesions, no lacerations, no tongue elevation.
*NECK:* Neck exam included findings of normal range of motion, Trachea midline, no cervical adenopathy, no tenderness, no abrasions, no contusions, no ecchymosis.
*RESPIRATORY CHEST:* Respiratory exam included findings of no respiratory distress, Breath sounds clear.
*CARDIOVASCULAR:* Heart sounds normal.
*UPPER EXTREMITY:* Upper extremity exam included findings of inspection normal, Range of motion normal.
*LOWER EXTREMITY:* Lower extremity exam included findings of inspection normal, Range of motion normal.
*NEURO:* Neuro exam findings include patient oriented to person, place and time, Speech normal, Gait normal.
*SKIN:* Skin exam included findings of skin warm, dry, and normal in color.

## DOCTOR NOTES (22:36 HMN)
*TEXT:* **supervising physician Dr. Munoz.**
**Patient states he typically uses his inhaler about 3 times a day. States he is not his inhaler for the last 4 days. Denies any difficulty breathing or wheezing. Denies any other complaints. States he just feels better when he has an inhaler just in case.**

## DECATUR MEMORIAL HOSPITAL
## EMERGENCY ROOM DOCUMENT

**HALLIBURTON, KEITH A**
DOB: 4/12/1978 M36
Wt/Ht: 96.62 Kg
MedRec: 0000062919
AcctNum: 1420100130

### EVENTS
*TRANSFER:* Triage to Emergency Triage. (Sun Jul 20, 2014 14:08 MAR)
  Removed from Emergency Triage. (15:52 KNK)

### PRESCRIPTION (15:34 HMN)
*ProAir HFA:* Aerosol : Cfc Free 90 Mcg/Inh : Inhalation : Quantity: *** 1–2 *** Unit: INH
  Route: Inhalation Schedule: Every 4 hrs. PRN Dispense: *** 1 ***
  May substitute. Refills: *** No Refills ***.
*NOTES:* No refills
  May substitute.

### DISPOSITION
*PATIENT:* Disposition: Home, Condition: Stable. (15:35 HMN)
  Call Back Status: NO: Callback not needed, Call Back Reason: Does Not Meet Criteria, Patient
  left the department. (15:52 KNK)
*NOTES:* +++
  Call to discuss your case with your primary care doctor for further evaluation urgent followup.
  Any new or worse symptoms any difficulty breathing, or any other concerns return to emergency
  room immediately
  +++
  You must call your primary care doctor at 8:30 tomorrow morning for urgent followup. If you're
  unable to get follow up with primary doctor urgently return to emergency room
  +++
  Use the proair inhaler as directed. (15:35 HMN)
  NOTES CHANGED, +++
  Call to discuss your case with your primary care doctor for further evaluation urgent followup.
  Any new or worse symptoms any difficulty breathing, or any other concerns return to emergency
  room immediately
  +++
  You must call your primary care doctor at 8:30 tomorrow morning for urgent followup. If you're
  unable to get follow up with primary doctor urgently return to emergency room
  +++
  Use the proair inhaler as directed. (15:38 MAR)
  NOTES CHANGED, +++
  Call to discuss your case with your primary care doctor for further evaluation urgent followup.
  Any new or worse symptoms any difficulty breathing, or any other concerns return to emergency
  room immediately
  +++
  You must call your primary care doctor at 8:30 tomorrow morning for urgent followup. If you're
  unable to get follow up with primary doctor urgently return to emergency room
  +++
  Use the proair inhaler as directed. (15:52 KNK)

### GREET (14:00 DMI)
*GREET:* Greet: Sun Jul 20, 2014 14:00.

### INSTRUCTION (15:38 MAR)
*DISCHARGE:* ASTHMA.
*PHARMACY:* ProAir HFA.
*SPECIAL:* Call to discuss your case with your primary care doctor for further evaluation
  urgent followup. Any new or worse symptoms any difficulty breathing, or any other concerns return
  to emergency room immediately
  +++
  You must call your primary care doctor at 8:30 tomorrow morning for urgent followup. If you're

## DECATUR MEMORIAL HOSPITAL
## EMERGENCY ROOM DOCUMENT

**HALLIBURTON, KEITH A**
DOB: 4/12/1978 M36
Wt/Ht: 96.62 Kg
MedRec: 0000062919
AcctNum: 1420100130

unable to get follow up with primary doctor urgently return to emergency room
+++
Use the proair inhaler as directed.

### ADMIN
*DIGITAL SIGNATURE:*  Munoz, MD, Gabe. (16:25 GM)
  Nobles, PA, Heather. (Mon Jul 21, 2014 10:41 HMN)

**Key:**
 **DM1=Modesty, Debby  GM=Munoz, MD, Gabe  HMN=Nobles, PA, Heather  KNK=Keeling, RN, Kayla
 MAR=Riedell, RN, Maryann**

# EXHIBIT B

# michael Cohen

**From:** mcohenlaw@aol.com

**Sent Date:** Monday, May 11, 2020 8:01 PM

**To:** KEITH A HALLIBURTON (11406026)

**Subject:** RE: YOU WERE APPROVED ON HERE

As soon as we hit the 30 days I will file the motion

KEITH A HALLIBURTON on 5/7/2020 9:49:37 PM wrote
okay, as you may know the cases have gone up everyday here. They removed tents and made bonkers here in the middle of the compound. we are to wear the masks but due to my asthma i cant keep it on because it takes away from my breathing. we are the last people standing that dont have it and in due time it will make it to us. my anxiety is thru the roof and that alone is triggering my asthma to flare up..
-----Cohen, Michael on 5/7/2020 10:06 AM wrote:

>

Hard to say

We will have to use our best judgment

This is where you can hep by e mailing me and keeping me informed

Then we can make a joint decision

KEITH A HALLIBURTON on 5/6/2020 4:34:55 PM wrote
okay, if we file the folow up letter how long will we give him to respond???
-----Cohen, Michael on 5/6/2020 11:06 AM wrote:

>

The next move is either to send a follow up letter to the warden when we reach the 30 day date on May 15 or thereafter file a judicial request for relief

Please keep me posted

KEITH A HALLIBURTON on 5/5/2020 2:20:53 PM wrote
whats the next move after we hear from the warden or if we dont within 30 days...Also they have alot more cases here and our building is the last to have it, they put tents in the middle of the compound and as well got us still on lock down..
-----Cohen, Michael on 5/4/2020 12:06 PM wrote:

>

Please keep me posted

KEITH A HALLIBURTON on 4/30/2020 1:35:55 PM wrote
hey, I don't know how true its but i heard the the warden has been demoted....
-----Cohen, Michael on 4/23/2020 5:51 PM wrote:

>

thanks

KEITH A HALLIBURTON on 4/22/2020 7:49:53 PM wrote
will do, there are more cases here as well, the unit manager just told us in a unit meeting